## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

CADENCE BANK, N.A., as successor-in-interest
by merger to Superior Bank, N.A., as successor-in-
interest to Superior Bank, FSB, by asset acquisition
from the FDIC as receiver for Superior Bank, FSB,

      Plaintiff,

vs.                                            CASE NO.

CELTAE, LLC, a Florida limited liability company, OLIVER
H. DUCIMETIERE-MONOD, individually, 101 EAST GULF BEACH
DR., LLC, an inactive Florida limited liability company, ANCHOR REALTY
AND MORTGAGE COMPANY OF ST. GEORGE ISLAND, INC., a
Florida corporation, PEREMANS, INC., a dissolved Florida corporation,
ANCHOR VACATION PROPERTIES REAL ESTATE REFERRALS f/k/a
ANCHOR VACATION PROPERTIES, INC., a Florida corporation, and
101 FRANKLIN BOULEVARD, LLC, a Florida limited liability company,
STATES RESOURCES CORP., as assignee from Wachovia Bank, N.A., an Iowa
corporation, DURDEN ENTERPRISES, LLC, a dissolved Florida limited liability
company, COASTLINE PUBLICATIONS, INC., a dissolved Florida corporation,

_____/

## VERIFIED COMPLAINT

Plaintiff, Cadence Bank, N.A., a national association, as successor-in-interest by merger to

Superior Bank, N.A., as successor-in-interest to Superior Bank, FSB by asset acquisition from the

FDIC as receiver for Superior Bank, FSB (the "Bank"), hereby sues Celtae, LLC, a Florida limited

liability company ("Celtae"), Oliver H. Ducimetiere-Monod ("Monod"), 101 East Gulf Beach Dr.,

LLC, an inactive Florida limited liability company ("101 East Gulf"), Anchor Realty and Mortgage

Company of St. George Island, Inc., a Florida corporation ("Anchor Realty"), Peremans, Inc., a

dissolved Florida corporation ("Peremans"), Anchor Vacation Properties Real Estate Referrals f/k/a

Anchor Vacation Properties, Inc. a Florida corporation ("Anchor Vacation"), and 101 Franklin

Boulevard, LLC ("101 Franklin"), a Florida limited liability company, all together referred to herein

as the "Obligors," and States Resources Corp., as assignee from Wachovia Bank, N.A., an Iowa

corporation ("States Resources"), Durden Enterprises, LLC, a dissolved Florida limited liability company ("Durden"), and Coastline Publications, Inc., a dissolved Florida corporation ("Coastline") and alleges:

## 1.     PRELIMINARY ALLEGATIONS

1.     The Bank is a national association doing business in the Northern District of Florida, with its principal place of business in Birmingham, Alabama.

2.     Celtae is a Florida limited liability company doing business in the Northern District of Florida.

3.     Monod is an individual residing and doing business in the Northern District of Florida.

4.     101 East Gulf is an inactive Florida limited liability company formerly doing business in the Northern District of Florida.

5.     Anchor Realty is a Florida corporation doing business in the Northern District of Florida.

6.     Peremans is a dissolved Florida corporation formerly doing business in the Northern District of Florida.

7.     Anchor Vacation is a Florida corporation doing business in the Northern District of Florida.

8.     101 Franklin is a Florida limited liability company doing business in the Northern District of Florida.

9.     States Resources is an Iowa corporation doing business in the Northern District of Florida as assignee of Wachovia Bank, N.A.

10.     Durden is a voluntarily dissolved Florida limited liability company formerly doing business in the Northern District of Florida.

11.     Coastline is an administratively dissolved Florida limited liability company formerly doing business in the Northern District of Florida.

12.     Pursuant to Title 28 of the United States Code § 1332(a)(1), and other applicable law, jurisdiction over this cause exists.

13.     Pursuant to Title 28 of the United States Code § 1391(a), venue is proper in the Northern District of Florida.

14.     As to each cause of action set forth in this verified complaint (the "Complaint"), this is an action wherein the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees; it is involving the title or possession of real property; and/or it is seeking equitable or other accompanying relief.

15.     With respect to each cause of action set forth in the Complaint, this is an action either:

    a.     to foreclose on mortgage liens encumbering certain real properties located in the Northern District of Florida;

    b.     to obtain other related relief pertaining to said properties located in the Northern District of Florida; and/or

    c.     to recover damages pursuant to certain agreements executed, delivered, and/or defaulted upon in the Northern District of Florida.

16.     With respect to each cause of action set forth herein, the Obligors have defaulted pursuant to the obligations owed to the Bank (collectively, the "Obligations"); the Obligations are demanded, to the extent necessary, by and through the filing and service of the Complaint, and the service of accompanying original process, to the extent not formally demanded as described below.

17.     All requirements and conditions precedent to the bringing of this cause have been satisfied, performed, and/or waived by the Bank and/or the applicable Obligors.

18.     With respect to each cause of action set forth herein, the subject defaults, as hereafter alleged, have required the Bank to retain the undersigned law firm for purposes of initiating this cause.   The Bank has agreed to pay the undersigned law firm a reasonable fee for its services rendered and costs incurred.  With respect to the Obligations set forth herein, the attorneys' fees and costs incurred by the Bank in connection herewith are additionally components of the same.

19.     For purposes of this Complaint, the Obligations are referred to respectively herein as the "First Celtae Obligation," loan number 60582375, the "Second Celtae Obligation," loan number 60582383, the "Anchor Realty Obligation," loan number 60350741, the "First Monod Obligation," loan number 60583118, and the "Second Monod Obligation," loan number 60629789, the "First 101 Franklin Obligation," loan number 60725079, and the "Second 101 Franklin Obligation," loan number 60630833.   The Obligations are evidenced by a series of loan, security, perfection, and guaranty documents (collectively, the "Loan Documents").   For purposes of this Complaint, the Loan Documents are respectively referred to herein as the "First Celtae Loan Documents," the "Second Celtae Loan Documents," the "Anchor Realty Loan Documents," the "First Monod Loan Documents," the "Second Monod Loan Documents," the "First 101 Franklin Loan Documents," and the "Second 101 Franklin Loan Documents."

20.     The First Celtae Obligation, Second Celtae Obligation, Anchor Realty Obligation, First Monod Obligation and Second Monod Obligation (together, the "Cross-Collateralized Obligations") are cross-collateralized and cross-defaulted pursuant to the "Cross-Collateralization, Cross-Default and Cross-Guaranty Agreement" (the "Cross-Collateralization Agreement") executed and delivered by the Obligors to the Bank on February 28, 2007 and attached hereto as Exhibit "A."

21.     Pursuant to the Cross-Collateralization Agreement, Anchor Vacation, Peremans, Monod, 101 East Gulf, Anchor Realty, and Celtae all collectively guarantee the Cross-Collateralized Obligations and are referred to herein as the "Cross-Guarantors" or "Cross-Obligors."

22.     The Bank is the owner and holder of the Loan Documents, as successor-in-interest by merger to Superior Bank, N.A., as successor-in-interest to Superior Bank, N.A., by asset acquisition from the FDIC as receiver for Superior Bank, N.A. to the extent necessary to bring this action. A copy of the "Affidavit of Merger" is attached hereto as Exhibit "B," and a copy of the "Assignment of Security Interests and Other Loan Documents" is attached hereto as Exhibit "C."

23.     This Complaint seeks in rem and in personam relief against the Obligors and the collateral securing the Obligations, as defined below.

### A.     ALLEGATIONS RELATING TO THE CELTAE OBLIGATIONS

24.     The First Celtae Obligation and Second Celtae Obligation originally consisted of one obligation referred to by the Bank as Loan Number 60292741 (the "Original Celtae Loan").  The Original Celtae Obligation was evidenced by the following Loan Documents (the "Original Celtae Loan Documents").

    a.     "Commercial Promissory Note," executed and delivered by Celtae to the Bank on or as of May 28, 2004, in the original principal amount of $4,564,500.00, a copy of which is attached hereto as Exhibit "D";

    b.     "Commercial Promissory Note," executed and delivered by Celtae to the Bank on or as of June 23, 2006 on account of the Original Celtae Loan, a copy of which is attached hereto as Exhibit "E";

    c.     "Commercial Promissory Note," executed and delivered by Celtae to the Bank on or as of August 28, 2006 on account of the Original Celtae Loan, a copy of which is attached hereto as Exhibit "F";

    d.     "Guaranty," executed and delivered by Anchor Vacation on or as of May 28, 2004 on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "G";

    e.     "Guaranty," executed and delivered by Peremans on or as of May 28, 2004 on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "H";

    f.     "Guaranty," executed and delivered by Monod on or as of May 28, 2004 on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "I";

g.  "Guaranty," executed and delivered by 101 East Gulf on or as of May 28, 2004 on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "J";

h.  "Guaranty," executed and delivered by Anchor Realty on or as of May 28, 2004 on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "K";

i.  "Guaranty," executed and delivered by Monod on or as of June 23, 2006, on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "L";

j.  "Guaranty," executed and delivered by 101 East Gulf on or as of June 23, 2006, on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "M";

k.  "Guaranty," executed and delivered by Peremans on or as of June 23, 2006, on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "N";

l.  "Guaranty," executed and delivered by Anchor Vacations on or as of June 23, 2006, on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "O";

m.  "Guaranty," executed and delivered by Anchor Realty on or as of June 23, 2006, on account of all obligations of Celtae, including but not limited to the Original Celtae Loan, a copy of which is attached hereto as Exhibit "P";

n.  "Pledge and Security Agreement (Common Stock)," executed and delivered by Monod and Celtae to the Bank on or as of May 28, 2004, evidencing Monod's granting the Bank a security interest in his stock of Peremans, a copy of which is attached hereto as Exhibit "Q";

o.  "Real Estate Mortgage," executed and delivered by Celtae on or as of May 28, 2004, granting the Bank a security interest and lien in 135 Franklin Boulevard, St. George Island, Florida (the "135 Franklin Property"), Florida, recorded as Instrument Number 0200407815 in the Official Records of Franklin County, Florida, along with the "Assignment of Leases and Rents," recorded as Instrument Number 0200407816 in the Official Records of Franklin County, Florida, the "Modification of Mortgage," dated June 23, 2006, and recorded as Instrument Number 0200604131 in the Official Records of Franklin County, Florida, and the "Modification of Mortgage," dated August 28, 2006, and recorded as Instrument Number 0200606993 in the Official Records of Franklin County, Florida, all securing the Original Celtae Loan, copies of which are attached hereto as Composite Exhibit "R";

p.  "Real Estate Mortgage" executed and delivered by Monod, on or as of May 28, 2004, granting the Bank a security interest and lien in 82 6th Street,

Apalachicola, Florida and 119 Franklin Boulevard, St. George Island, Florida (together, the "Apalachicola/Monod Property"), recorded as Instrument Number 0200407813 in the Official Records of Franklin County, Florida, along with the "Assignment of Leases and Rents," dated May 28, 2004, and recorded as Instrument Number 0200407814 in the Official Records of Franklin County, Florida, the "Modification of Mortgage" dated June 23, 2006, and recorded as Instrument Number 0200604132 in the Official Records of Franklin County, Florida, and the "Modification of Mortgage," dated August 28, 2006, and recorded as Instrument Number 0200606992 in the Official Records of Franklin County, Florida, all securing the Original Celtae Loan, copies of which are attached hereto as Composite Exhibit "S";

q.    "Real Estate Mortgage" executed and delivered by Monod, on or as of May 28, 2004, granting the Bank a security interest and lien in 1200 U.S. Highway 98, Mexico Beach, Florida, recorded in Official Records Book 2492, Page 1166, in the Official Records of Bay County, Florida, along with the "Assignment of Leases and Rents," dated May 28, 2004, and recorded in Official Records Book 2492, Page 1175, in the Official Records of Bay County, Florida, the "Partial Release and Substitution of Collateral," substituting 6260 Highway 98, Port St. Joe, Florida as the security (the "Port St. Joe Property"), dated January 26, 2006, and recorded in Official Records Book 2731, Page 1623, of the Official Records of Bay, County, Florida, the "Modification of Mortgage" dated June 23, 2006, and recorded as Instrument Number 0200604130 in the Official Records of Franklin County, Florida, the "Modification of Mortgage," dated June 23, 2006, and recorded as Instrument Number 0020065271 in the Official Records of Gulf  County, Florida, and the "Modification of Mortgage," dated September 27, 2006, and recorded as Instrument Number 0020065579 in the Official Records of Gulf County, Florida, all securing the Original Celtae Loan, copies of which are attached hereto as Composite Exhibit "T"; and

r.    "Real Estate Mortgage," executed and delivered by 101 East Gulf, on or as of June 9, 2004, granting the Bank a security interest and lien in 101 East Gulf Beach Drive, St. George Island (the "101 East Gulf Property"), and recorded as Instrument Number 0200407817 in the Official Records of Franklin County, Florida, along with the "Assignment of Leases and Rents," dated June 9, 2004, and recorded as Instrument Number 0200407818 in the Official Records of Franklin County, Florida, the "Modification of Mortgage," dated June 23, 2006, and recorded as Instrument Number 0200604133, in the Official Records of Franklin County, Florida, and the "Modification of Mortgage," dated August 28, 2006, and recorded as Instrument Number 0200606994 in the Official Records of Gulf County, Florida, all securing the Original Celtae Loan, copies of which are attached hereto as Composite Exhibit "U."

25.    On or about February 28, 2007, and thereafter, Celtae, Monod, 101 East Gulf, Anchor Vacation, and Anchor Realty executed the First Celtae Loan Documents, which collectively evidence

and govern the terms and conditions of a lending relationship involving the First Celtae Obligation. The First Celtae Loan Documents include the following:

a. "Commercial Renewal Promissory Note," dated February 28, 2007, in the original principal amount of $3,565,000, executed and delivered by Celtae to the Bank, renewing the Original Celtae Loan, and assigning Loan Number 60582375 (the "First Celtae Obligation"), a copy of which is attached hereto as Exhibit "1-A";

b. "Loan Modification and Reinstatement Agreement," executed and delivered by Celtae to the Bank on or as of December 21, 2007, a copy of which is attached hereto as Exhibit "1-B";

c. "Commercial Renewal Promissory Note," executed and delivered by Celtae to the Bank on or as of December 17, 2009, in the original principal amount of $3,219,196.93, renewing the First Celtae Obligation, a copy of which is attached hereto as Exhibit "1-C";

d. "Continuing and Unconditional Guaranty of Payment," executed and delivered by Monod to the Bank on or as of December 17, 2009, a copy of which is attached hereto as Exhibit "1-D";

e. "Commercial Second Renewal Promissory Note," executed and delivered by Celtae to the bank on or as of March 31, 2011, in the original principal amount of $1,650,000, a copy of which is attached hereto as Exhibit "1-E";

f. "Continuing and Unconditional Guaranty of Payment," executed and delivered by Monod to the Bank on or as of March 31, 2011 a copy of which is attached hereto as Exhibit "1-F"; and

g. "UCC-1 Financing Statement," filed July 1, 2011, Instrument Number 201104884737 in the Florida Secured Transaction Registry, a copy of which is attached hereto as Exhibit "1-G."

26. The First Celtae Obligation is secured by the 135 Franklin Property, Apalachicola/Monod Property, Port St. Joe Property, and the 101 East Gulf Property (together, the "Celtae Obligation Properties"), as well as the Anchor Realty Property, First Monod Property, and Second Monod Property, as defined below, all of which are collectively referred to herein as the "Cross-Collateralized Properties."

27. The First Celtae Obligation is principally owed by Celtae, and guaranteed the Cross-Guarantors, all of whom with Celtae are collectively referred to herein as the "Celtae Obligors."

28.     The First Celtae Obligation is in a state of default for failure to pay the installment payments due and owing on the First Celtae Obligation as well as defaults as to the Cross-Collateralized Obligations.

29.     As a result of the foregoing defaults, the Bank deems itself insecure, and has demanded payment of the same.  A copy of the demand letter (the "Cross-Collateralized Demand") is attached hereto as Exhibit "1-H."

30.     As of February 15, 2013, the First Celtae Obligation together with after-accruing interest and costs, comes to total amount due and owing of $1,745,296.57, including a principal balance of $1,650,000, accrued interest in the amount of $34,332.02, late fees in the amount of $37,455.79, and forced place insurance in the amount of $23,508.76. The interest since that date is entitled to be computed at the Bank's applicable default interest rate under the First Celtae Loan Documents, but in no event higher than the maximum interest allowed by law, pursuant to Florida Statutes § 687.071 and other applicable law.  Although the interest calculation set forth above is reflected at the non-default interest rate, the Bank is expressly reserving the right to seek default-rate interest from the referenced default date.

31.     The First Celtae Obligation additionally includes the First Celtae Obligors' liability for reimbursement of the Bank's attorneys' fees, court costs, and related compensable expenses incurred in prosecuting and enforcing its rights and remedies pursuant to the First Celtae Loan Documents, including attorneys' fees and costs paid by the Bank to its undersigned counsel as compensation and reimbursement for its efforts to enforce the First Celtae Loan Documents herein.

32.     On or about February 28, 2007, and thereafter, Celtae, Monod, 101 East Gulf, Anchor Vacation, and Anchor Realty executed the Second Celtae Loan Documents, that collectively evidence and govern the terms and conditions of a lending relationship involving the Second Celtae Obligation.  The Second Celtae Loan Documents include the following:

a. "Commercial Renewal Promissory Note," executed and delivered by Celtae to the Bank on or as of February 28, 2007, renewing a portion of the Original Caltae Loan, in the original principal amount of $908,500, a copy of which is attached hereto as Exhibit "2-A";

b. "Loan Modification and Reinstatement Agreement," executed and delivered by Celtae on or as of December 21, 2007, a copy of which is attached hereto as Exhibit "2-B";

c. "Commercial Renewal Promissory Note," executed and delivered by Celtae to the Bank on or as of December 17, 2009, in the original principal amount of $908,500, a copy of which is attached hereto as Exhibit "2-C";

d. "Continuing and Unconditional Guaranty of Payment," executed and delivered by Monod to the Bank on or as of December 17, 2009; a copy of which is attached hereto as Exhibit "2-D";

e. "Commercial Second Renewal Promissory Note," executed and delivered by Celtae to the Bank on or as of March 31, 2011, in the original principal amount of $2,496,410.13, amending a restating the Second Celtae Obligation as well as a portion of the First Celtae Obligation, a copy of which is attached hereto as Exhibit "2-E"; and

f. "Continuing and Unconditional Guaranty of Payment," executed and delivered by Monod to the Bank on or as of March 31, 2011, a copy of which is attached hereto as Exhibit "2-F."

33. The Second Celtae Obligation is secured by the Celtae Obligation Properties as well as the Cross-Collateralized Properties.

34. The Second Celtae Obligation is principally owed by Celtae, and guaranteed by the Cross-Guarantors.

35. The Second Celtae Obligation is in a state of default for failure to pay the installment payments due and owing on the Second Celtae Obligation as well as defaults as to the Cross-Collateralized Obligations.

36. As a result of the foregoing defaults, the Bank deems itself insecure, and has demanded payment of the same. A copy of the demand letter (the "Cross-Collateralized Demand") is attached hereto as Exhibit "1-H."

37.     As of February 15, 2013, the Second Celtae Obligation together with after-accruing interest and costs, comes to total amount due and owing of $2,667,866.57, including a principal balance of $2,496,410.13, accrued interest in the amount of $110,961.84, late fees in the amount of $36,985.84, and other fees in the amount of $23,508.76. The interest since that date is entitled to be computed at the Bank's applicable default interest rate under the Second Celtae Loan Documents, but in no event higher than the maximum interest allowed by law, pursuant to Florida Statutes § 687.071 and other applicable law.  Although the interest calculation set forth above is reflected at the non-default interest rate, the Bank is expressly reserving the right to seek default-rate interest from the referenced default date.

38.     The Second Celtae Obligation additionally includes the Second Celtae Obligors' liability for reimbursement of the Bank's attorneys' fees, court costs, and related compensable expenses incurred in prosecuting and enforcing its rights and remedies pursuant to the Second Celtae Loan Documents, including attorneys' fees and costs paid by the Bank to its undersigned counsel as compensation and reimbursement for its efforts to enforce the Second Celtae Loan Documents herein.

**B.     ALLEGATIONS RELATING TO ANCHOR REALTY OBLIGATION**

39.     On or about October 18, 2004, and thereafter, Anchor Realty and Monod executed and delivered to the Bank the Anchor Realty Loan Documents that collectively evidence and govern the terms and conditions of a lending relationship involving the Anchor Realty Obligation.  The Anchor Realty Loan Documents include the following:

    a.     "Commercial Promissory Note," executed and delivered by Anchor Realty on or as of October 18, 2004, in the original principal amount of $250,000, a copy of which is attached hereto as Exhibit "3-A";

    b.     "Guaranty," executed and delivered by Monod on or as of October 18, 2004, a copy of which is attached hereto as Exhibit "3-B";

c.   "Real Estate Mortgage," executed and delivered by Anchor Realty on or as of October 18, 2004, and recorded as Instrument Number 0200409992 in the Official Records of Franklin County, Florida, granting the Bank a security interest and lien in 431 West Highway 98, Apalachicola, Florida (the "Anchor Realty Property"), a copy of which is attached hereto as Exhibit "3-C";

d.   "Loan Modification and Reinstatement Agreement," executed and delivered by Anchor Realty on or as of December 21, 2007, a copy of which is attached hereto as Exhibit "3-D";

e.   "Commercial Renewal Promissory Note," executed and delivered by Anchor Realty on or as of December 17, 2009, in the original principal amount of $278,117.52, a copy of which is attached hereto as Exhibit "3-E";

f.   "Continuing and Unconditional Guaranty of Payment," executed and delivered by Monod on or as of December 17, 2009, a copy of which is attached hereto as Exhibit "3-F";

g.   "Commercial Renewal Promissory Note," executed and delivered by Anchor Realty on or as of March 31, 2011, in the original principal amount of $283,393.83, a copy of which is attached hereto as Exhibit "3-G"; and

h.   "Continuing and Unconditional Guaranty of Payment," executed and delivered by Monod on or as of March 31, 2011, a copy of which is attached hereto as Exhibit "3-H."

40.   The Anchor Realty Obligation is secured by the Anchor Realty Property, located at 431 West Highway 98, Apalachicola, Florida, in addition to the Cross-Collateralized Properties, and is guaranteed by the Cross-Guarantors.

41.   Anchor Realty and Monod (together, the "Anchor  Realty Obligors") have defaulted pursuant to all of the Anchor Realty Loan Documents, by failing to make installment payments due and owing under the Anchor Realty Loan Documents, as well as defaults on the Cross-Collateralized Obligations.

42.   As a result of the foregoing defaults, the Bank deems itself insecure, and has demanded payment of the same.  A copy of the demand letter (the "Cross-Collateralized Demand") is attached hereto as Exhibit "1-H."

43.   As of February 15, 2013, the Anchor Realty Obligation together with after-accruing interest and costs comes to total amount due and owing of $323,551.27, including a principal balance

of $283,393.83, accrued interest of $9,036.63, late fees in the amount of $15,629.92, and other fees in the amount of $15,490.89. The interest since that date is entitled to be computed at the Bank's applicable default interest rate under the Anchor Realty Loan Documents, but in no event higher than the maximum interest allowed by law, pursuant to Florida Statutes § 687.071 and other applicable law. Although the interest calculation set forth above is reflected at the non-default interest rate, the Bank is expressly reserving the right to seek default-rate interest from the referenced default date.

44.    The Anchor Realty Obligation additionally includes the Anchor Realty Obligors' liability for reimbursement of the Bank's attorneys' fees, court costs, and related compensable expenses incurred in prosecuting and enforcing its rights and remedies pursuant to the Anchor Realty Loan Documents, including attorneys' fees and costs paid by the Bank to its undersigned counsel as compensation and reimbursement for its efforts to enforce the Anchor Realty Loan Documents herein.

### C.    ALLEGATIONS RELATING TO FIRST MONOD OBLIGATION

45.    On or about December 19, 2003, and thereafter, Monod executed and delivered to the Bank the First Monod Loan Documents that collectively evidence and govern the terms and conditions of a lending relationship involving the First Monod Obligation. The First Monod Loan Documents include the following:

    a.    "Commercial Loan Agreement," executed and delivered by Monod on or as of December 19, 2003, in the original principal amount of $454,00, a copy of which is attached hereto as Exhibit "4-A";

    b.    "Commercial Promissory Note," executed and delivered by Monod or on as of December 19, 2003, in the original principal amount of $454,000, a copy of which is attached hereto as Exhibit "4-B";

    c.    "Real Estate Mortgage," executed and delivered by Monod on or as of December 19, 2003, and recorded as Instrument Number 0020037836 in the Official Records of Gulf County, Florida, granting the Bank a security interest and lien in 6260 Highway 98, St. Joe Beach, Florida (the "First Monod Property"), a copy of which is attached hereto as Exhibit "4-C";

    d.      "Assignment of Leases and Rents," executed and delivered by Monod on or as of December 19, 2003, and recorded as Instrument Number 0020037835 in the Official Records of Gulf County, Florida, a copy of which is attached hereto as Exhibit "4-D";

    e.      "Commercial Renewal Promissory Note," executed and delivered by Monod on or as of February 28, 2007, in the original principal amount of $421,282, a copy of which is attached hereto as Exhibit "4-E";

    f.      "Amendment to and Extension of Mortgage and Note," executed and delivered by Monod to the Bank on or as of February 28, 2007, and recorded as Instrument Number 0020072316 of the Official Records of Gulf County, Florida, a copy of which is attached hereto as Exhibit "4-F";

    g.      "Loan Modification and Reinstatement Agreement," executed and delivered by Monod on or as of December 21, 2007, a copy of which is attached hereto as Exhibit "4-G";

    h.      "Mortgage," executed and delivered by Monod to Durden on or as of December 21, 2007, and recorded as Instrument Number 200823002145 of the Official Records of Gulf County, Florida, a copy of which is attached hereto as Exhibit "4-H";

    i.      "Subordination Agreement," executed and delivered by Monod and the Bank on or as of December 21, 2007, and recorded as Instrument Number 200823002146 of the Official Records of Gulf County, Florida, a copy of which is attached hereto as Exhibit "4-I";

    j.      "Commercial Renewal Promissory Note," executed and delivered by Monod on or as of December 17, 2009, in the original principal amount of $427,282, a copy of which is attached hereto as Exhibit "4-J";

    k.      "Assignment of Mortgage," executed and delivered by Durden Enterprises, LLC, to the Bank, on or as of December 21, 2009, a copy of which is attached hereto as Exhibit "4-K";

    l.      "Commercial Second Renewal Promissory Note," executed and delivered by Anchor Realty on or as of March 31, 2011, in the original principal amount of $427,282, a copy of which is attached hereto as Exhibit "4-L";

46.    The First Monod Obligation is secured by the First Monod Property, in addition to the Cross-Collateralized Properties, and is guaranteed by the Cross-Guarantors.

47.    The Monod has defaulted pursuant to all of the First Monod Loan Documents by failing to make installment payments due and owing under the First Monod Loan Documents, as well as defaults on the Cross-Collateralized Obligations.

48.     As a result of the foregoing defaults, the Bank deems itself insecure, and has demanded payment of the same.  A copy of the demand letter (the "Cross-Collateralized Demand") is attached hereto as Exhibit "1-H."

49.     As of February 15, 2013, the First Monod Obligation together with after-accruing interest, attorneys' fees, and costs, comes to total amount due and owing of $466,282.00, including principal in the amount of $427,282.00, accrued interest in the amount of $13,008.37, late fees in the amount of $23,459.13, and other fees in the amount of $2,835.22. The interest since that date is entitled to be computed at the Bank's applicable default interest rate under the Loan Documents, but in no event higher than the maximum interest allowed by law, pursuant to Florida Statutes § 687.071 and other applicable law.  Although the interest calculation set forth above is reflected at the non-default interest rate, the Bank is expressly reserving the right to seek default-rate interest from the referenced default date.

50.     The First Monod Obligation additionally includes Monod's liability for reimbursement of the Bank's attorneys' fees, court costs, and related compensable expenses incurred in prosecuting and enforcing its rights and remedies pursuant to the First Monod Loan Documents, including attorneys' fees and costs paid by the Bank to its undersigned counsel as compensation and reimbursement for its efforts to enforce the First Monod Loan Documents herein.

### D.     ALLEGATIONS RELATING TO SECOND MONOD OBLIGATION

51.     On or about December 19, 2003, and thereafter, Monod executed and delivered to the Bank the Second Monod Loan Documents that collectively evidence and govern the terms and conditions of a lending relationship involving the Second Monod Obligation.  The Second Monod Loan Documents include the following:

    a.     "Commercial Loan Agreement," executed and delivered by Monod on or as of December 19, 2003, in the original principal amount of $525,000, a copy of which is attached hereto as Exhibit "5-A";

b.      "Commercial Promissory Note," executed and delivered by Monod or on as of December 19, 2003, in the original principal amount of $525,000, a copy of which is attached hereto as Exhibit "5-B";

c.      "Real Estate Mortgage," executed and delivered by Monod on or as of December 19, 2003, and recorded as Instrument Number 0020037833 in the Official Records of Gulf County, Florida, granting the Bank a security interest and lien in 4693 Cap San Blas Road, Cape San Blas, Florida (the "Second Monod Property"), a copy of which is attached hereto as Exhibit "5-C";

d.      "Commercial Promissory Note," executed and delivered by Monod on or as of July 29, 2004, in the original principal amount of $525,000, a copy of which is attached hereto as Exhibit "5-D";

e.      "Commercial Loan Agreement," executed and delivered by Monod on or as of July 29, 2004, in the original principal amount of $525,000, a copy of which is attached hereto as Exhibit "5-E";

f.      "Modification of Mortgage," executed and delivered by Monod on or as of July 20, 2004, and recorded as Instrument Number 0200407033, in the Official Records of Gulf County, Florida, a copy of which is attached hereto as Exhibit "5-F";

g.      "Amendment to and Extension of Mortgage and Note," executed and delivered by Monod to the Bank on or as of February 28, 2007, and recorded as Instrument Number 0020072317 of the Official Records of Gulf County, Florida, a copy of which is attached hereto as Exhibit "5-G";

h.      "Commercial Renewal Promissory Note," executed and delivered by Monod to the Bank on or as of February 28, 2007, in the original principal amount of $514,677.00, a copy of which is attached hereto as Exhibit "5-H";

i.      "Commercial Renewal Promissory Note," executed and delivered by Monod to the Bank on or as of December 28, 2007, in the original principal amount of $530,324.52, a copy of which is attached hereto as Exhibit "5-I"; and

j.      "Commercial Modified Promissory Note," executed and delivered by Monod to the Bank on or as of December 17, 2009, in the original principal amount of $497,157.24, a copy of which is attached hereto as Exhibit "5-J."

52.     The Second Monod Obligation is secured by the Second Monod Property, in addition to the Cross-Collateralized Properties, and is guaranteed by the Cross-Guarantors.

53.     The Monod has defaulted pursuant to all of the Second Monod Loan Documents by failing to make installment payments due and owing under the Second Monod Loan Documents, as well as defaults on the Cross-Collateralized Obligations.

54.     As a result of the foregoing defaults, the Bank deems itself insecure, and has demanded payment of the same.  A copy of the demand letter (the "Cross-Collateralized Demand") is attached hereto as Exhibit "1-H."

55.     As of February 15, 2013, the Second Monod Obligation together with after-accruing interest, attorneys' fees, and costs, comes to total amount due and owing of $469,776.68, including principal in the amount of $441,598.66, accrued interest in the amount of $1,251.20, late fees in the amount of $23,431.69, and other fees in the amount of $3,495.13. The interest since that date is entitled to be computed at the Bank's applicable default interest rate under the Loan Documents, but in no event higher than the maximum interest allowed by law, pursuant to Florida Statutes § 687.071 and other applicable law.  Although the interest calculation set forth above is reflected at the non-default interest rate, the Bank is expressly reserving the right to seek default-rate interest from the referenced default date.

56.     The Second Monod Obligation additionally includes Monod's liability for reimbursement of the Bank's attorneys' fees, court costs, and related compensable expenses incurred in prosecuting and enforcing its rights and remedies pursuant to the Second Monod Loan Documents, including attorneys' fees and costs paid by the Bank to its undersigned counsel as compensation and reimbursement for its efforts to enforce the Second Monod Loan Documents herein.

### E. ALLEGATIONS RELATING TO FIRST 101 FRANKLIN OBLIGATION

57.     On or about December 18, 2009, and thereafter, 101 Franklin and Monod (together, the "101 Franklin Obligors"), executed and delivered to the Bank the 101 Franklin First Loan Documents that collectively evidence and govern the terms and conditions of a lending relationship

involving the 101 Franklin First Obligation.  The 101 Franklin First Loan Documents include the following:

a. "Commercial Construction Draw Promissory Note with Conversion Feature," executed and delivered by 101 Franklin to the Bank on or as of December 18, 2009, in the original principal amount of $2,875,000, a copy of which is attached hereto as Exhibit "6-A";

b. "Construction and Permanent Loan Agreement," executed and delivered by 101 Franklin to the Bank on or as of December 18, 2009, a copy of which is attached hereto as Exhibit "6-B";

c. "Mortgage and Security Agreement and Assignment of Rents and Proceeds," executed and delivered by 101 Franklin and Monod to the Bank on or as of December 18, 2009, and recorded as Instrument Number 200919007135 in the Official Records of Franklin County, Florida, and Instrument Number 201023001379 in the Official Records of Gulf County, Florida, evidencing the Obligors' granting of a security interest and lien in real properties and improvements located in Gulf and Franklin Counties, Florida (together, the "First 101 Franklin Mortgaged Property") to secure the 101 Franklin First Obligation, a copy of which is attached hereto as Exhibit "6-C";

d. "Assignment of Rents, Leases and Proceeds," executed and delivered by 101 Franklin and Monod to the Bank on or as of December 18, 2009, and recorded as Instrument Number 100919007136 of the Official Records of Franklin County, Florida, and Instrument Number 201023001380 of the Official Records of Gulf County, Florida, evidencing the Obligors' assignment of all rents and leases associated with the First 101 Franklin Mortgaged Property (collectively, the "First 101 Franklin Rents"), a copy of which is attached hereto as Exhibit "6-D";

e. "Security Agreement and Irrevocable Power of Attorney," executed and delivered by 101 Franklin, Monod, Celtae, Anchor Vacation, and Anchor Realty (together, the "Co-Makers"), on or as of December 18, 2009, representing a security interest in the assets of the Co-Makers, as more fully described therein (the "First 101 Franklin Personal Property"), a copy of which is attached hereto as Exhibit "6-E";

f. "UCC-1 Financing Statement," given by the 101 Franklin Obligors to the Bank and recorded as Instrument Number 200919007138 of the Official Records of Franklin County, Florida, and Instrument Number 201023001381 of the Official Records of Gulf County, Florida, a copy of which is attached hereto as Exhibit "6-F";

g. "Amendment to Mortgage and Note," executed and delivered by 101 Franklin to the Bank on or as of April 9, 2010, and recorded as Instrument Number 201019001985 in the Official Records of Franklin County, Florida,

representing the inclusion of additional lands (the "Additional 101 Franklin Lands") as security for the First Obligation, the Additional 101 Franklin Lands and Mortgaged Property are collectively referred to together herein as the "First 101 Franklin Mortgaged Properties," a copy of which is attached hereto as Exhibit "6-G";

h.   "Assignment of Deposit or Share Account," executed and delivered by 101 Franklin on or as of February 23, 2010, representing the Bank's security interest in deposit account number 7000134648, a copy of which attached hereto as Exhibit "6-H";

i.   "Continuing and Unconditional Guaranty of Payment," executed and delivered by Monod on or as of December 18, 2009, a copy of which is attached hereto as Exhibit "6-I";

58.   The First 101 Franklin Obligation is secured by the First 101 Franklin Mortgaged Properties.

59.   The 101 Franklin Obligors have defaulted pursuant to all of the First 101 Franklin Loan Documents by failure to pay the full balance of the Obligation at maturity of the same on December 31, 2011.

60.   As a result of the foregoing defaults, the Bank deems itself insecure, and has demanded payment of the same.  A copy of the demand letter (the "101 Franklin Demand") is attached hereto as Exhibit "6-J."

61.   As of February 15, 2013, the First 101 Franklin Obligation together with after-accruing interest, attorneys' fees, and costs, comes to total amount due and owing of $2,957,248.57, including principal in the amount of $2,815,302.48, accrued interest in the amount of $128,655.36, and other fees in the amount of $13,290.73. The interest since that date is entitled to be computed at the Bank's applicable default interest rate under the Loan Documents, but in no event higher than the maximum interest allowed by law, pursuant to Florida Statutes § 687.071 and other applicable law. Although the interest calculation set forth above is reflected at the non-default interest rate, the Bank is expressly reserving the right to seek default-rate interest from the referenced default date.

62.     The First 101 Franklin Obligation additionally includes the 101 Franklin Obligors'

liability for reimbursement of the Bank's attorneys' fees, court costs, and related compensable

expenses incurred in prosecuting and enforcing its rights and remedies pursuant to the First 101

Franklin Loan Documents, including attorneys' fees and costs paid by the Bank to its undersigned

counsel as compensation and reimbursement for its efforts to enforce the First 101 Franklin Loan

Documents herein.

### F. ALLEGATIONS RELATING TO SECOND 101 FRANKLIN OBLIGATION

63.     On or about January 15, 2008, and thereafter, the 101 Franklin Obligors executed and

delivered to the Bank the Second 101 Franklin Loan Documents that collectively evidence and

govern the terms and conditions of a lending relationship involving the Second 101 Franklin

Obligation.  The Second 101 Franklin Loan Documents include the following:

a.      "Commercial Draw Promissory Note with Conversion Feature," executed and
delivered by 101 Franklin to the Bank on or as of January 15, 2008, in the
original principal amount of $1,500,000, a copy of which is enclosed herein
as Enclosure "7-A";

b.      "Construction Loan Agreement," executed and delivered by the 101 Franklin
Obligors to the Bank on or as of January 15, 2008, a copy of which is
enclosed herein as Enclosure "7-B";

c.      "Mortgage and Security Agreement, and Assignment of Rents and Proceeds,"
executed and delivered by 101 Franklin to the Bank on or as of January 15,
2008, and recorded as Instrument Number 200819000290 in the Official
Records of Franklin County, Florida, representing 101 Franklin's granting of
a security interest and lien in real property and improvements (the "Second
101 Franklin Mortgaged Property") to secure the Second 101 Franklin
Obligation, a copy of which is enclosed herein as Enclosure "7-C";

d.      "Collateral Assignment of Contract," executed and delivered by 101 Franklin
to the Bank on or as of January 11, 2008, representing the assignment of the
Borrower's interest in the contract between 101 Franklin and St. George
Island Trading Company, a copy of which is enclosed herein as Enclosure "7-
D";

e.      "Security Agreement and Irrevocable Power of Attorney," executed and
delivered by the 101 Franklin Obligors to the Bank, on or as of January 15,
2008, representing a security interest in the assets of the 101 Franklin

Obligors, as more fully described therein (the "Second Personal Property"), a copy of which is enclosed herein as Enclosure "7-E";

f.   "UCC-1 Financing Statement," given by the 101 Franklin Obligors to the Bank and recorded as Instrument Number 200819000292 in the Official Records of Franklin County, Florida, a copy of which is enclosed herein as Enclosure "7-F";

g.   "Renewal Commercial Promissory Note with Conversion Feature," executed and delivered by 101 Franklin to the Bank on or as of May 15, 2008, in the original principal amount of $1,500,000, a copy of which is enclosed herein as Enclosure "7-G"; and

h.   "Addendum to Construction Loan Agreement," executed and delivered by the 101 Franklin Obligors to the Bank on or as of June 18, 2008, copy of which is enclosed herein as Enclosure "7-H."

64.    The Second 101 Franklin Obligation is secured by the Second 101 Franklin Mortgaged Property.

65.    The 101 Franklin Obligors have defaulted pursuant to all of the Second 101 Franklin Loan Documents by failing to make installment payments due and owing under the Second 101 Franklin Loan Documents.

66.    As a result of the foregoing defaults, the Bank deems itself insecure, and has demanded payment of the same.  A copy of the demand letter (the "101 Franklin Demand") is attached hereto as Exhibit "6-J."

67.    As of February 15, 2013, the Second 101 Franklin Obligation together with after-accruing interest, attorneys' fees, and costs, comes to total amount due and owing of $1,424,332.35, including principal in the amount of $1,358,549.39, accrued interest in the amount of $45,143.87 late fees in the amount of $1,300.00, and other fees in the amount of $19,339.09. The interest since that date is entitled to be computed at the Bank's applicable default interest rate under the Loan Documents, but in no event higher than the maximum interest allowed by law, pursuant to Florida Statutes § 687.071 and other applicable law.  Although the interest calculation set forth above is

reflected at the non-default interest rate, the Bank is expressly reserving the right to seek default-rate interest from the referenced default date.

68.     The Second 101 Franklin Obligation additionally includes the 101 Franklin Obligors' liability for reimbursement of the Bank's attorneys' fees, court costs, and related compensable expenses incurred in prosecuting and enforcing its rights and remedies pursuant to the Second 101 Franklin Loan Documents, including attorneys' fees and costs paid by the Bank to its undersigned counsel as compensation and reimbursement for its efforts to enforce the Second 101 Franklin Loan Documents herein.

## COUNT I:  SUIT ON FIRST CELTAE OBLIGATION

69.     This is an action for damages against Celate resulting from its default pursuant to the terms of the First Celtae Loan Documents.

70.     The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

71.     The entire aggregate amount of the First Celtae Obligation remains due and owing by Celtae to the Bank.

72.     The First Celtae Loan Documents were executed and delivered in the Northern District of Florida.  Some or all breaches of the First Celtae Loan Documents have occurred in the Northern District of Florida.

WHEREFORE, the Bank requests judgment for damages against Celtae in the full amount of the First Celtae Obligation, plus interest, court costs, and reasonable attorneys' fees and costs, recoverable pursuant to the First Celtae Loan Documents, and for such other and further relief as this Court deems just.

## COUNT II:  SUIT ON FIRST CELTAE OBLIGATION GUARANTIES

73.     This is an action against the Cross-Guarantors resulting from their default pursuant to the terms of the First Celtae Obligation Loan Documents' and Cross-Collateralization Agreement guaranties included among the Loan Documents.

74.     The Bank realleges and incorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

75.     The entire amount of the First Celtae Obligation remains due and owing by the Cross-Guarantors to the Bank.

WHEREFORE, the Bank requests judgment for damages against the Cross-Guarantors, for the full amount of the First Celtae Obligation, as obligated under the First Celtae Obligation Loan Documents, plus interest, court costs, and reasonable attorneys' fees recoverable pursuant to the First Celtae Obligation Loan Documents.

## COUNT III:  SUIT ON SECOND CELTAE OBLIGATION

76.     This is an action for damages against Celate resulting from its default pursuant to the terms of the Second Celtae Loan Documents.

77.     The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

78.     The entire aggregate amount of the Second Celtae Obligation remains due and owing by Celtae to the Bank.

79.     The Second Celtae Loan Documents were executed and delivered in the Northern District of Florida.  Some or all breaches of the Second Celtae Loan Documents have occurred in the Northern District of Florida.

WHEREFORE, the Bank requests judgment for damages against Celtae in the full amount of the Second Celtae Obligation, plus interest, court costs, and reasonable attorneys' fees and costs,

recoverable pursuant to the Second Celtae Loan Documents, and for such other and further relief as this Court deems just.

### COUNT IV:  SUIT ON SECOND CELTAE OBLIGATION GUARANTIES

80.     This is an action against the Cross-Guarantors resulting from their default pursuant to the terms of the Second Celtae Obligation Loan Documents' and Cross-Collateralization Agreement guaranties included among the Loan Documents.

81.     The Bank realleges and incorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

82.     The entire amount of the Second Celtae Obligation remains due and owing by the Cross-Guarantors to the Bank.

WHEREFORE, the Bank requests judgment for damages against the Cross-Guarantors, for the full amount of the Second Celtae Obligation, as obligated under the Second Celtae Obligation Loan Documents, plus interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Second Celtae Obligation Loan Documents.

### COUNT V:  FORECLOSURE OF THE CELTAE OBLIGATION PROPERTIES

83.     This is an action to foreclose the Bank's mortgage lien upon the Celtae Obligation Properties owned by Celtae, Monod, and 101 East Gulf, and located in the Northern District of Florida, to satisfy the Cross-Collateralized Obligations.

84.     The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

85.     The Cross-Collateralized Obligations are in a state of default, such that they remain due and owing.

86.     The Obligors may claim some right, title, or interest in some or all of the Celtae Obligation Properties; however, any such right, title, or interest is junior and inferior to that of the

Bank, including without limitation those arising under the Celtae Loan Documents, as well as all other documents of encumbrance of record in favor of the Bank and encumbering the same.

87.     States Resources may claim some right, title, or interest in the Celtae Obligation Properties by virtue of the Judgment recorded in Official Records Book 1066, Page 710 of the Public Records of Franklin County, Florida and Official Records Book 522, Page 167 of the Public Records of Gulf County, however, such right, title or interest is junior and inferior to that of the Bank.

88.     Durden may claim some right, title, or interest in the Celtae Obligation Properties by virtue of the Mortgage recorded in Official Records Book 966, Page 760 of the Public Records of Franklin County, Florida, and Official Records Book 458, Page 916 of the Public Records of Gulf County, Florida, however, such right, title, or interest is junior and inferior to that of the Bank.

WHEREFORE, the Bank requests judgment against Celtae, Monod, 101 East Gulf, States Resources, and Durden, foreclosing its mortgage lien upon the Celtae Obligation Properties pursuant to the Celtae Loan Documents, and if the proceeds are insufficient to fully satisfy the Cross-Collateralized Obligations, a deficiency judgment against the Cross-Obligors, and for such other and further relief as this Court deems just.

## COUNT VI:  SUIT ON ANCHOR REALTY OBLIGATION

89.     This is an action for damages against Anchor Realty resulting from its default pursuant to the terms of the Anchor Realty Loan Documents.

90.     The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

91.     The entire aggregate amount of the Anchor Realty Obligation remains due and owing by Anchor Realty to the Bank.

92.     The Anchor Realty Loan Documents were executed and delivered in the Northern District of Florida.  Some or all breaches of the Anchor Realty Loan Documents have occurred in the Northern District of Florida.

WHEREFORE, the Bank requests judgment for damages against Anchor Realty in the full amount of the Anchor Realty Obligation, plus interest, court costs, and reasonable attorneys' fees and costs, recoverable pursuant to the Anchor Realty Loan Documents, and for such other and further relief as this Court deems just.

### COUNT VII:  SUIT ON ANCHOR REALTY OBLIGATION GUARANTY

93.     This is an action against the Cross-Guarantors resulting from their default pursuant to the terms of the guaranty and Cross-Collateralization Agreement included among the Loan Documents.

94.     The Bank realleges and incorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

95.     The entire amount of the Anchor Realty Obligation remains due and owing by the Cross-Guarantors to the Bank.

WHEREFORE, the Bank requests judgment for damages against the Cross-Guarantors, for the full amount of the Anchor Realty Obligation, as obligated under the Anchor Realty Loan Documents, plus interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Anchor Realty Loan Documents.

### COUNT VIII:  FORECLOSURE OF ANCHOR REALTY PROPERTY

96.     This is an action to foreclose the Bank's mortgage lien upon the Anchor Realty Property owned by Anchor Realty, and located in the Northern District of Florida, to satisfy the Cross-Collateralized Obligations.

97.     The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

98.     The Anchor Realty Obligation is in a state of default, such that it remains due and owing.

99.     The Obligors may claim some right, title, or interest in some or all of the Anchor Realty Property; however, any such right, title, or interest is junior and inferior to that of the Bank, including without limitation those arising under the Anchor Realty Loan Documents, as well as all other documents of encumbrance of record in favor of the Bank and encumbering the same.

100.    States Resources may claim some right, title, or interest in the Anchor Realty Property virtue of the Judgment recorded in Official Records Book 1066, Page 710 of the Public Records of Franklin County, Florida, however, such right, title or interest is junior and inferior to that of the Bank.

WHEREFORE, the Bank requests judgment against the Obligors and States Resources, foreclosing its mortgage lien upon the Anchor Realty Property pursuant to the Anchor Realty Loan Documents, and if the proceeds are insufficient to fully satisfy the Anchor Realty Obligation, a deficiency judgment against the Cross-Obligors, and for such other and further relief as this Court deems just.

## COUNT IX:  SUIT ON FIRST MONOD OBLIGATION

101.    This is an action for damages against Monod resulting from his default pursuant to the terms of the First Monod Loan Documents.

102.    The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

103.    The entire aggregate amount of the First Monod Obligation remains due and owing by Monod to the Bank.

104.    The First Monod Loan Documents were executed and delivered in the Northern District of Florida.  Some or all breaches of the First Monod Loan Documents have occurred in the Northern District of Florida.

WHEREFORE, the Bank requests judgment for damages against Monod in the full amount of the First Monod Obligation, plus interest, court costs, and reasonable attorneys' fees and costs,

recoverable pursuant to the First Monod Loan Documents, and for such other and further relief as this Court deems just.

**COUNT X:  FORECLOSURE OF FIRST MONOD PROPERTY**

105.    This is an action to foreclose the Bank's mortgage lien upon the First Monod Property owned by Monod, and located in the Northern District of Florida, to satisfy the Cross-Collateralized Obligations.

106.    The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

107.    The First Monod Obligation is in a state of default and maturity, such that it remains due and owing.

108.    The Obligors may claim some right, title, or interest in some or all of the First Monod Property; however, any such right, title, or interest is junior and inferior to that of the Bank, including without limitation those arising under the First Monod Loan Documents, as well as all other documents of encumbrance of record in favor of the Bank and encumbering the same.

109.    States Resources may claim some right, title, or interest in the Celtae Obligation Properties by virtue of the Judgment recorded in Official Records Book 1066, Page 710 of the Public Records of Franklin County, Florida and Official Records Book 522, Page 167 of the Public Records of Gulf County, however, such right, title or interest is junior and inferior to that of the Bank.

110.    Durden may claim some right, title, or interest in the Celtae Obligation Properties by virtue of the Mortgage recorded in Official Records Book 966, Page 760 of the Public Records of Franklin County, Florida, and Official Records Book 458, Page 916 of the Public Records of Gulf County, Florida, however, such right, title, or interest is junior and inferior to that of the Bank.

WHEREFORE, the Bank requests judgment against the Obligors, States Resources, and Durden, foreclosing its mortgage lien upon the First Monod Property pursuant to the First Monod Loan Documents, and if the proceeds are insufficient to fully satisfy the Cross-Collateralized

Obligations, a deficiency judgment against the Cross-Collateralized Obligors, and for such other and further relief as this Court deems just.

### COUNT XI:  SUIT ON SECOND MONOD LOAN DOCUMENTS

111.    This is an action for damages against Monod resulting from his default pursuant to the terms of the Second Monod Loan Documents.

112.    The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

113.    The entire aggregate amount of the Second Monod Obligation remains due and owing by Monod to the Bank.

114.    The Second Monod Loan Documents were executed and delivered in the Northern District of Florida.  Some or all breaches of the Second Monod Loan Documents have occurred in the Northern District of Florida.

WHEREFORE, the Bank requests judgment for damages against Monod in the full amount of the Second Monod Obligation, plus interest, court costs, and reasonable attorneys' fees and costs, recoverable pursuant to the Second Monod Loan Documents, and for such other and further relief as this Court deems just.

### COUNT XII:  FORECLOSURE OF SECOND MONOD PROPERTY

115.    This is an action to foreclose the Bank's mortgage lien upon the Second Monod Property owned by Monod, and located in the Northern District of Florida, to satisfy the Cross-Collateralized Obligations.

116.    The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

117.    The Second Monod Obligation is in a state of default, such that it remains due and owing.

118.    The Obligors may claim some right, title, or interest in some or all of the Second Monod Property; however, any such right, title, or interest is junior and inferior to that of the Bank, including without limitation those arising under the Second Monod Loan Documents, as well as all other documents of encumbrance of record in favor of the Bank and encumbering the same.

119.    States Resources may claim some right, title, or interest in the Celtae Obligation Properties by virtue of the Judgment recorded in Official Records Book 1066, Page 710 of the Public Records of Franklin County, Florida and Official Records Book 522, Page 167 of the Public Records of Gulf County, however, such right, title or interest is junior and inferior to that of the Bank.

WHEREFORE, the Bank requests judgment against the Obligors, foreclosing its mortgage lien upon the Second Monod Property pursuant to the Second Monod Loan Documents, and if the proceeds are insufficient to fully satisfy the Cross-Collateralized Obligations, a deficiency judgment against the Cross-Collateralized Obligors, and for such other and further relief as this Court deems just.

**COUNT XIII:  SUIT ON FIRST AND SECOND MONOD OBLIGATION GUARANTIES**

120.    This is an action against the Cross-Guarantors resulting from their default pursuant to the terms of the guaranty and Cross-Collateralization Agreement included among the Loan Documents.

121.    The Bank realleges and incorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

122.    The entire amount of the First and Second Monod Obligations remain due and owing by the Cross-Guarantors to the Bank.

WHEREFORE, the Bank requests judgment for damages against the Cross-Guarantors, for the full amount of the First and Second Monod Obligations, as obligated under the Loan Documents, plus interest, court costs, and reasonable attorneys` fees recoverable pursuant to the Loan Documents.

## COUNT XIV:  SUIT ON FIRST 101 FRANKLIN OBLIGATION

123.     This is an action for damages against 101 Franklin resulting from its default pursuant to the terms of the First 101 Franklin Loan Documents.

124.     The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

125.     The entire aggregate amount of the First 101 Franklin Obligation remains due and owing by 101 Franklin.

126.     The First 101 Franklin Loan Documents were executed and delivered in the Northern District of Florida.  Some or all breaches of the First 101 Franklin Loan Documents have occurred in the Northern District of Florida.

WHEREFORE, the Bank requests judgment for damages against 101 Franklin in the full amount of the First 101 Franklin Obligation, plus interest, court costs, and reasonable attorneys' fees and costs, recoverable pursuant to the First 101 Franklin Loan Documents, and for such other and further relief as this Court deems just.

## COUNT XV:  SUIT ON FIRST 101 FRANKLIN OBLIGATION GUARANTY

127.     This is an action against Monod resulting from his default pursuant to the terms of the First 101 Franklin Loan Documents' guaranties included among the First 101 Franklin Obligation Loan Documents.

128.     The Bank realleges and incorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

129.     The entire amount of the First 101 Franklin Obligation remains due and owing by the Monod to the Bank.

WHEREFORE, the Bank requests judgment for damages against Monod, for the full amount of the First 101 Franklin Obligation, as obligated under the First 101 Franklin Obligation Loan

Documents, plus interest, court costs, and reasonable attorneys' fees recoverable pursuant to the First 101 Franklin Obligation Loan Documents.

### COUNT XVI:  FORECLOSURE OF FIRST 101 FRANKLIN PROPERTIES

130.    This is an action to foreclose the Bank's mortgage lien upon the First 101 Franklin Properties owned by 101 Franklin, and located in the Northern District of Florida, to satisfy the First 101 Franklin Obligation.

131.    The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

132.    The First 101 Franklin Obligation is in a state of default, such that it remains due and owing.

133.    The Obligors may claim some right, title, or interest in some or all of the First 101 Franklin Properties; however, any such right, title, or interest is junior and inferior to that of the Bank, including without limitation those arising under the First 101 Franklin Loan Documents, as well as all other documents of encumbrance of record in favor of the Bank and encumbering the same.

134.    Coastline Publication may claim some right, title or interest in some or all of the First 101 Franklin Properties by virtue of the Judgment recorded in Official Records Book 1008, Page 208 of the Public Records of Franklin County, Florida; however, such right, title, or interest is junior and inferior to that of the Bank.

135.    States Resources may claim some right, title, or interest in some or all of the First 101 Franklin Obligation Properties by virtue of the Judgment recorded in Official Records Book 1066, Page 710 of the Public Records of Franklin County, Florida and Official Records Book 522, Page 167 of the Public Records of Gulf County, however, such right, title or interest is junior and inferior to that of the Bank.

WHEREFORE, the Bank requests judgment against the Obligors, Coastline Publications, and States Resources, foreclosing its mortgage lien upon the First 101 Franklin Properties pursuant to First 101 Franklin Loan Documents, and if the proceeds are insufficient to fully satisfy the First 101 Franklin Obligation, a deficiency judgment against the 101 Franklin Obligors, and for such other and further relief as this Court deems just.

## COUNT XVII:  SUIT ON SECOND 101 FRANKLIN OBLIGATION

136.    This is an action for damages against 101 Franklin resulting from its default pursuant to the terms of the Second 101 Franklin Loan Documents.

137.    The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

138.    The entire aggregate amount of the Second 101 Franklin Obligation remains due and owing by 101 Franklin.

139.    The Second 101 Franklin Loan Documents were executed and delivered in the Northern District of Florida.  Some or all breaches of the Second 101 Franklin Loan Documents have occurred in the Northern District of Florida.

WHEREFORE, the Bank requests judgment for damages against 101 Franklin in the full amount of the Second 101 Franklin Obligation, plus interest, court costs, and reasonable attorneys' fees and costs, recoverable pursuant to the Second 101 Franklin Loan Documents, and for such other and further relief as this Court deems just.

## COUNT XVIII:  SUIT ON SECOND 101 FRANKLIN OBLIGATION GUARANTY

140.    This is an action against Monod resulting from his default pursuant to the terms of the Second 101 Franklin Loan Documents' guaranties included among the Second 101 Franklin Obligation Loan Documents.

141.    The Bank realleges and incorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

142.    The entire amount of the Second 101 Franklin Obligation remains due and owing by the Monod to the Bank.

WHEREFORE, the Bank requests judgment for damages against Monod, for the full amount of the Second 101 Franklin Obligation, as obligated under the Second 101 Franklin Obligation Loan Documents, plus interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Second 101 Franklin Obligation Loan Documents.

### COUNT XIX:  FORECLOSURE OF SECOND 101 FRANKLIN PROPERTY

143.    This is an action to foreclose the Bank's mortgage lien upon the Second 101 Franklin Property owned by 101 Franklin, and located in the Northern District of Florida, to satisfy the Second 101 Franklin Obligation.

144.    The Bank realleges and reincorporates paragraphs 1 through 68 of this Complaint as though fully set forth herein.

145.    The Second 101 Franklin Obligation is in a state of default, such that it remains due and owing.

146.    The Obligors may claim some right, title, or interest in some or all of the Second 101 Franklin Property; however, any such right, title, or interest is junior and inferior to that of the Bank, including without limitation those arising under the Second 101 Franklin Loan Documents, as well as all other documents of encumbrance of record in favor of the Bank and encumbering the same.

147.    Coastline Publication may claim some right, title or interest in some or all of the First 101 Franklin Properties by virtue of the Judgment recorded in Official Records Book 1008, Page 208 of the Public Records of Franklin County, Florida; however, such right, title, or interest is junior and inferior to that of the Bank.

148.    States Resources may claim some right, title, or interest in the Second 101 Franklin Property by virtue of the Judgment recorded in Official Records Book 1066, Page 710 of the Public

Records of Franklin County, Florida and Official Records Book 522, Page 167 of the Public Records of Gulf County, however, such right, title or interest is junior and inferior to that of the Bank.

WHEREFORE, the Bank requests judgment against the Obligors, Coastline Publications, and States Resources, foreclosing its mortgage lien upon the Second 101 Franklin Property  pursuant to Second 101 Franklin Loan Documents, and if the proceeds are insufficient to fully satisfy the Second 101 Franklin Obligation, a deficiency judgment against the 101 Franklin Obligors, and for such other and further relief as this Court deems just.

## COUNT XX: REPLEVIN OF 101 FRANKLIN PERSONAL PROPERTY

149.    This is an action against 101 Franklin and Monod to recover possession of the 101 Franklin Personal Property, to which the Bank is authorized pursuant to the 101 Franklin Loan Documents, and Florida Statutes § 679 to liquidate in order to satisfy the full amount of the Second 101 Franklin Obligation.

150.    The Bank realleges and incorporates paragraphs 1 through 68 of this Complaint as those fully set forth herein.

151.    Initial process filed herewith reflects or will reflect that a writ of replevin is sought based upon the Bank's submissions to this Complaint intended to satisfy the terms of Florida Statutes § 78.032, and other applicable law.

152.    Pursuant to Florida Statutes § 78.055, the statutory predicates for issuance of a writ of replevin are as follows:

(a)    the 101 Franklin Personal Property described in the Loan Documents;

(b)    the Loan Documents are enforceable pursuant to Florida Statutes § 679, and provide the basis for the Bank's statutory rights, based upon the default status of the Obligations;

(c)    the 101 Franklin Personal Property is valued at less than the total of the Second 101 Franklin Obligation, and the Bank is prepared to post a bond in

the appropriate amount as a condition precedent to the granting of pre-judgment relief as sought herein;

(d)     the 101 Franklin Personal Property is located in the Northern District of Florida;

(e)     the 101 Franklin Personal Property is wrongfully detained by the 101 Franklin Obligors who continue to retain possession following events of default described above;

(f)     the 101 Franklin Personal Property has not been taken for any tax, assessment or fine pursuant to law; and

(g)     the 101 Franklin Personal Property has not been taken under any execution or attachment against the 101 Franklin Obligors and/or the 101 Franklin Obligors' property.

153.    Upon information and believe, the 101 Franklin Personal Property is not subject to any senior claims or interests of any other third party and any such interest would be junior and inferior to the claims and liens of the Bank, and should therefore be foreclosed.  101 Franklin and/or Monod hold title to the 101 Franklin Personal Property, and may claim some residual interest in these regards.

154.    Pursuant to the terms of the Loan Documents, the Second 101 Franklin Obligation is in a state of uncured default, and remain due and owing.

WHEREFORE, the Bank requests (1) the entry of orders authorizing the Clerk of this Court to issue a writ of replevin, instructing each the United States Marshal to replevy the 101 Franklin Personal Property and deliver to the Bank forthwith; (2) the entry of a final judgment of replevin on the 101 Franklin Personal Property in its favor and against 101 Franklin and Monod; and (3) the entry of a deficiency judgment in its favor and against the 101 Franklin Obligors in the likely event

that the Bank's liquidation of the 101 Franklin Personal Property produces funds insufficient to fully

satisfy the total amount of the Second 101 Franklin Obligation.

Dated this 2⁔ day of March, 2013.

**JOHN A. ANTHONY, ESQUIRE**
Florida Bar No. 0731013
janthony@anthonyandpartners.com
**ALLISON C. DOUCETTE, ESQUIRE**
Florida Bar No. 0085577
adoucette@anthonyandpartners.com
Anthony & Partners, LLC
201 N. Franklin Street, Suite 2800
Tampa, Florida  33602
Telephone:  813/273-5616
Facsimile:  813/221-4113
Attorneys for Cadence Bank, N.A.

## **VERIFICATION**

STATE OF FLORIDA
COUNTY OF LEON

I, Eric Reed, as Assistant Vice President, Special Assets Department for Cadence Bank, N.A., as successor-in-interest to Superior Bank, N.A., as successor-in-interest to Superior Bank, FSB, by asset acquisition from the FDIC as receiver for Superior Bank, FSB, hereby declare under penalty of perjury under the laws of the United States that the information contained in the Verified Complaint is true and correct, except to those paragraphs that apply Florida and federal law, as I am not a member of the Florida Bar.

**ERIC REED**
Assistant Vice President, Special Assets Department

STATE OF FLORIDA
COUNTY OF LEON

The foregoing instrument was acknowledged before me, this ___ day of February, 2013, by Eric Reed, who is personally known to me.

print name _Elaine Swafford_
Notary Public, State at Large
(commission number and expiration date)

ELAINE SWAFFORD
MY COMMISSION # EE 011564
EXPIRES: August 17, 2014
Bonded Thru Notary Public Underwriters