IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CADENCE BANK, N.A., as successor-in-interest
by merger to Superior Bank, N.A., as successor-in-
interest to Superior Bank, FSB, by asset acquisition
from the FDIC as receiver for Superior Bank, FSB,

      Plaintiff,

v.                                CASE NO. 4:13-cv-304-RS-CJK

CELTAE, LLC, a Florida limited liability company, OLIVER
H. DUCIMETIERE-MONOD, individually, 101 EAST GULF BEACH
DR., LLC, an inactive Florida limited liability company, ANCHOR REALTY
AND MORTGAGE COMPANY OF ST. GEORGE ISLAND, INC., a
Florida corporation, PEREMANS, INC., a dissolved Florida corporation,
ANCHOR VACATION PROPERTIES REAL ESTATE REFERRALS f/k/a
ANCHOR VACATION PROPERTIES, INC., a Florida corporation, and
101 FRANKLIN BOULEVARD, LLC, a Florida limited liability company,
STATES RESOURCES CORP., as assignee from Wachovia Bank, N.A., an Iowa
corporation, DURDEN ENTERPRISES, LLC, a dissolved Florida limited liability
company, COASTLINE PUBLICATIONS, INC., a dissolved Florida corporation,

      Defendants.
_____/

**AGREED ORDER (A) DENYING QUASH MOTION, (B) GRANTING
INTERIM SEQUESTRATION OF RENTS, (C) DEFERRING CONSIDERATION
OF RECEIVERSHIP MOTION, AND (D) GRANTING RELATED RELIEF**

THIS CAUSE came before this Court, for <u>ex parte</u> consideration, upon the agreement of Cadence Bank, N.A., as successor-in-interest by merger to Superior Bank, N.A., as successor-in-interest to Superior Bank, FSB, by asset acquisition from the FDIC as receiver for Superior Bank, FSB (the "Bank"), and Celtae, LLC, a Florida limited liability company, 101 Franklin Boulevard, LLC, Oliver H. Ducimetiere-Monod, 101 East Gulf Beach Dr., LLC, an inactive Florida limited liability company, Anchor Realty

and Mortgage Company of St. George Island, Inc., a Florida corporation, Peremans, Inc., a dissolved Florida corporation, and Anchor Vacation Properties Real Estate Referrals f/k/a Anchor Vacation Properties, Inc. a Florida corporation, collectively referred to herein as the "Obligors," all of whom are collectively referred to herein as the "Parties," of the Stipulation and Joint Motion of Bank and Obligors to (A) Deny Quash Motion, (B) Grant Interim Sequestration of Rents, (C) Defer Consideration Of Receivership Motion, and (D) Grant Related Relief (this "Stipulation") (Doc. 28), filed on or as of June 5, 2013, the background of which is as follows:

1. On or as of April 2, 2013, the Bank initiated this action by filing its the verified complaint initiating this cause (the "Complaint") (Doc. 1), seeking in personam relief against the Obligors with respect to certain indebtedness (collectively, the "Obligations"), and additionally seeking in rem relief against the Obligors and other named defendants above (collectively, the "Competing Lienholders") with respect to collateral that the Bank contends secures the Obligations (collectively, the "Collateral").

2. On April 29, 2013, the Obligors filed a Motion to Quash Service of Process (the "Quash Motion") (Doc. 7) disputing personal jurisdiction over one or more of the Obligors.

3. On May 13, 2013, the Bank filed Cadence Bank's in Opposition to Defendants' Motion to Quash Service of Process (the "Quash Response") (Doc. 22) opposing the position articulated by the Obligors in the Quash Motion.

4. On May 6, 2013, the Bank filed Cadence Bank's Motion for Appointment of Receiver to Maintain and Safeguard Assets of the Beach Store Property and the Inn

(the "Receivership Motion") (Doc. 20), seeking appointment by this Court of a receiver to operate the Collateral, and for related relief.

5. On May 10, 2013, the Obligors filed Defendants' Response to Plaintiff's Motion for Appointment of Receiver (the "Receivership Response") (Doc. 21) opposing the position articulated by the Bank in the Receivership Motion.

6. Following the filing of the Quash Motion, the Quash Response, the Trustee Motion, and the Trustee Response (collectively, the "Pending Motions"), this Court scheduled a hearing to consider all of the Pending Motions, to occur at June 6, 2013, at 1:30 p.m. (the "Scheduled Hearing") pursuant to an order (the "Scheduling Order") (Doc. 25) entered by this Court on May 23, 2013.  Other procedural history of this cause is not consequential to the relief provided herein.

7. Based upon the agreement of the Parties, as expressed in the Stipulation, the Court has determined that it is appropriate to implement the interim resolution of the Pending Pleadings in a manner consistent with the Stipulation, without in any way impacting the substantive or procedural rights of the Competing Lienholders, none of whom are Parties to the same.

The Court has considered the record and the agreement of the parties, and

**IT IS ORDERED**:

1. The Quash Motion (Doc. 7) is **DENIED**, and the Obligors are directed to file their respective answer, affirmative defenses, and counterclaim as applicable, before the close of business on June 26, 2013.

2. The Scheduled Hearing is continued to September 5, 2013, at 1:30 p.m. (the "Rescheduled Hearing"), to consider the merits of the Receivership Motion and the Receivership Response. For purposes of this Order, the time period between entry of this Order and the Rescheduled Hearing is referred to as the "Sequestration Term."

3. During the Sequestration Term, the Obligors are directed to perform in accordance with the following rent sequestration, Collateral maintenance, financial reporting, and other terms and conditions:

> a. **Insurance Reporting:** Before the close of business on June 11, 2013, the Obligors shall provide the Bank with proof of property and casualty insurance coverages required for operation of their businesses and protection of the Collateral. Insurance on the Collateral shall be in an amount consistent with the Loan Documents and shall name the Bank as additional insured and loss payee. The Bank shall be permitted to reasonably request confirmation of insurance coverages during the Sequestration Term.
>
> b. **Budget:** Before the close of business on June 11, 2013, and on the twenty-fifth (25th) day of every month from June 25, 2013 during the Sequestration Term, the Obligors shall furnish the Bank with a "Projected Statement of Revenues & Expenses" (the "Budget") in a form consistent with basic financial reporting practices utilized in rent sequestration and receivership contexts. The Budget due for

June 11, 2013, shall be for the month of June 2013. All other Budgets shall be for the following month.

c. **Monthly P&Ls and Sequestration Payments:** It is expressly contemplated that there will be net rents and other cash collateral of the Bank derived from the operation of the Collateral in the ordinary course. The Obligors are authorized and directed to furnish the Bank with a monthly profit and loss statement (the "P&L") reasonably compliant with industry standards for businesses of this nature, and for financial reporting to financial institutions, on the eleventh (11th) day of each month, for the immediately preceding month, beginning on July 11, 2013. Accompanying the P&L will be a monthly payment of all net rents and related profits (the "Sequestration Payment"). The Bank will apply these Sequestration Payments to the principal amount of the Obligations in a manner consistent with the Loan Documents, and account to the Obligors for application of the same within five (5) days after receipt of the same. The Bank shall be entitled to request and receive information and documentation reasonably required to verify the accuracy of P&Ls and confirm accuracy of the amount of the Sequestration Payments.

d. **Authorizations:** The Obligors are authorized to pay the reasonable and necessary expenses of the Collateral, as evidenced in any Budget that is not subject to an objection timely filed of record by the Bank

within five (5) days of receipt of the same. In the absence of objection by the Bank, the Budget shall be deemed approved by the Bank. However, the Obligors shall make no payments outside of the ordinary course of business except upon providing express notice to the Bank of the same, and providing the Bank five (5) days to object to any given proposed payment outside of the ordinary course of business. Additionally, the Obligors will execute no lease or other executory contract relating to the Collateral outside of the ordinary course of business without providing the Bank five (5) days' notice and opportunity to object to same in writing.

e. **Collateral Inspection:** The Bank and its agents shall be entitled to exercise their reasonable rights of inspection of the Collateral and the books and records relating to the operation of the same, whether in possession of the Obligors or any agent of the Obligors, their members, employees, and other agents, upon ninety-six (96) hours' e-mailed notice by counsel for the Bank to counsel for the Obligors.

f. **Mediation/Case Management Conference:** The Bank and the Obligors agree that a mediation-level settlement and case management conference will occur between and among clients and counsel of the Parties at some point in time between June 15, 2013, and June 28, 2013, in order to address the potential for partial or global resolution of the lending relationship at issue herein, and that

no additional discovery will occur until such time as the settlement conference has occurred. Counsel for the Parties will attend in person, but the Parties will be permitted to attend by telephone if preferred. The entire content of the conference shall be subject to the provisions of Florida Statutes §§ 44.406, 90.408, and 687.0304, and all information and documentation exchanged during the same shall additionally be protected pursuant to Florida Statutes § 655.059 and applicable federal bank secrecy statutes.

4. The Parties are directed to exercise their best efforts to resolve any dispute regarding the terms of this Order and compliance therewith, without the need to seek further judicial intervention.

5. If any of the Parties feel that there has been material default on any of the terms of Paragraph 3, that party shall notify the defaulting party and allow the defaulting party five (5) days to cure the default. If the alleged default is not cured within five (5) days, the party alleging the default may file a Sworn Certificate of Emergency Based Upon Default in Sequestration Terms (a "Default Notice"). The Default Notice shall include the names of at least two (2) individuals willing and able to serve as receiver. If the material default is proven to the court at a hearing, and no good cause is shown by the defaulting party why a receiver should not be appointed, the court will appoint a receiver for the Collateral without the establishment of any additional facts.

6. In addition to all other provisional relief granted in favor of the Bank, the relief set forth herein is without prejudice to the Bank's right to seek additional or

alternative relief during the Sequestration Term, based upon a material change of circumstances not otherwise contemplated in this Order.

7. The Parties' obligations hereunder shall remain in full force and effect until further order of this Court. The Court hereby reserves jurisdiction to enforce the terms of this Order and to grant such other and further relief as is necessary.

8. By their consent to the terms and conditions memorialized in this order, it is understood, agreed, and recognized by the Parties that this order shall not have precedential effect under any doctrine, including without limitation collateral estoppel, <u>res judicata</u>, or any other precedental doctrine, with respect to facts and issues, claims and defenses, or other matters associated with the progress of this case, and shall not constitute law of the case or an admission. Moreover, this Order shall have no force or effect as upon the Competing Lienholders.

**ORDERED** on June 6, 2013.

                                                          **/s/ Richard Smoak**
                                                          **RICHARD SMOAK**
                                                          **UNITED STATES DISTRICT JUDGE**