IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**CADENCE BANK, N.A., as successor-in-interest by merger to Superior Bank, N.A., as successor-in-interest to Superior Bank, FSB, by asset acquisition from the FDIC as receiver for Superior Bank, FSB,**

      Plaintiff,

vs.                                            CASE NO. 4:13-cv-304-RS-CJK

**CELTAE, LLC, et. al.,**

      Defendants.
_____/

## ORDER

THIS CAUSE came before this Court, upon the agreement of Cadence Bank, N.A., as successor-in-interest by merger to Superior Bank, N.A., as successor-in-interest to Superior Bank, FSB, by asset acquisition from the FDIC as receiver for Superior Bank, FSB (the "Bank") and, Celtae, LLC, Oliver H. Ducimetiere-Monod, individually, 101 East Gulf Beach Dr., LLC, Anchor Realty and Mortgage Company of St. George Island, Anchor Vacation Properties Real Estate Referrals f/k/a Anchor Vacation Properties, Inc., and 101 Franklin Boulevard, LLC (collectively, the "Defendants"), all of whom with the Bank are collectively referred to herein as the "Parties," pursuant to the terms of the "Stipulation Regarding Receivership Motion" (this "Stipulation"), filed on or as of October 28, 2013, the background of which is as follows:

1.    On or as of April 2, 2013, the Bank initiated this action by filing a verified complaint [Doc. No. 1]. In addition to the Defendants defined above, the Complaint names three additional defendants (the "Junior Lienholders") that the Bank contends may assert a claim, lien, or other interest in some or all of the Collateral.

2. On May 6, 2013, the Bank filed Cadence Bank's Motion for Appointment of Receiver to Maintain and Safeguard Assets of the Beach Store Property and the Inn (the "Receivership Motion") [Doc. No. 20], seeking appointment by this Court of a receiver to operate the Collateral, and for related relief.

3. On May 10, 2013, the Defendants filed "Defendants' Response to Plaintiff's Motion for Appointment of Receiver" (the "Receivership Response") [Doc. No. 21], opposing the Bank's Receivership Motion.

4. Following the filing of the Receivership Motion and Receivership Response, this Court scheduled a hearing to consider these motions on June 6, 2013, at 1:30 p.m. (the "Scheduled Hearing") pursuant to an order (the "Scheduling Order") [Doc. No. 25].

5. On June 5, 2013, the Parties filed a "Stipulation and Joint Motion of the Bank and Obligors to (A) Deny Quash Motion, (B) Grant Interim Sequestration of Rents, (C) Defer Consideration of Receivership Motion, and (D) Grant Related Relief" (the "First Stipulation") [Doc. No. 28]. Pursuant to the First Stipulation, the Parties agreed to resolve all pending motions before this Court. With regard to the Receivership Motion and Receivership Response, the Parties submitted a proposed order [Doc. No. 28-1], that provided, in part, for monthly profit and loss statements to be furnished by the Defendants to the Bank each month along with a monthly payment of all net rents and related profits (the "Sequestration Payment").

6. The "Agreed Order (A) Denying Quash Motion, (B) Granting Interim Sequestration of Rents, (C) Deferring Consideration of Receivership Motion, and (D) Granting Related Relief" (the "First Agreed Order") was entered on June 6, 2013, and incorporated the terms of the proposed order subject to minor revisions. [Doc. No. 29]

7. The Scheduled Hearing was continued to September 16, 2013.

8. On September 5, 2013, the Bank and the Obligors filed the "Stipulation and Joint Motion of the Bank and Obligors to (A) Grant Interim Sequestration of Rents, (B) Defer Consideration of Receivership Motion, and (C) Grant Related Relief" (the "Second Stipulation"). [Doc. No. 39].

9. On September 6, 2013, the Court entered the "Order" (the "Second Agreed Order") [Doc. No. 40] rescheduling the Scheduled Hearing to October 28, 2013, and incorporating the terms of the Second Stipulation.

10. The Parties have complied with all terms of the Second Agreed Order.

11. On October 28, 2013, the Court entered an Order cancelling the October 28, 2013, hearing.

12. Based upon the agreement of the Parties, as expressed in the Stipulation, the Court has determined that it is appropriate to deny the Receivership Motion, without prejudice, with the following conditions governing the Parties' behavior and protecting the Bank's interest in the Collateral.

The Court has considered the record and the agreement of the parties, and it is **ORDERED**:

1. The Receivership Motion is denied, without prejudice to the Bank's right to seek to re-file the Receivership Motion, based upon a material change of circumstances not otherwise contemplated in this Order.

2. The Obligors are directed to perform in accordance with the following rent sequestration, Collateral maintenance, financial reporting, and other terms and conditions during the pendency of this action:

a. **Budget:**  On or before the close of business on November 1, 2013, the Obligors shall furnish the Bank with a "Projected Statement of Revenues & Expenses" (the "Budget") in a form consistent with basic financial reporting practices utilized in rent sequestration and receivership contexts. The Budget shall contain a management fee for Monod's services in the amount of eight percent (8.00%). The Budget will cover rents and proceeds earned during November 2013.  The Budget for each consecutive month shall be provided to the Bank no later than the twentieth (20th) day of the preceding month.

b. **Monthly P&Ls and Sequestration Payments:**   It is expressly contemplated that there will be net rents and other cash collateral of the Bank derived from the operation of the Collateral in the ordinary course. The Obligors are authorized and directed to furnish the Bank with a monthly profit and loss statement (the "P&L") reasonably compliant with industry standards for businesses of this nature, and for financial reporting to financial institutions, on or before November 15, 2013, and on the fifteenth (15th) day of each month for the duration of this action. Accompanying the P&L will be a monthly payment of all net rents and related profits (the "Sequestration Payment").  The Bank will apply these Sequestration Payments to the principal amount of the Obligations in a manner consistent with the Loan Documents, and account to the Obligors for application of the same within five (5) days after receipt of the same. The Bank shall be entitled to request and receive information and

4

        documentation reasonably required to verify the accuracy of P&Ls and confirm accuracy of the amount of the Sequestration Payments.

    c. **Authorizations:** The Obligors are authorized to pay the reasonable and necessary expenses of the Collateral, as evidenced in any Budget that is not subject to an objection timely filed of record by the Bank within five (5) days of receipt of the same. In the absence of objection by the Bank, the Budget shall be deemed approved by the Bank. However, the Obligors shall make no payments outside of the ordinary course of business except upon providing express notice to the Bank of the same, and providing the Bank five (5) days to object to any given proposed payment outside of the ordinary course of business. Additionally, the Obligors will execute no lease or other executory contract relating to the Collateral outside of the ordinary course of business without providing the Bank five (5) days' notice and opportunity to object to same in writing.

    d. **Collateral Inspection:** The Bank and its agents shall be entitled to exercise their reasonable rights of inspection of the Collateral and the books and records relating to the operation of the same, whether in possession of the Obligors or any agent of the Obligors, their members, employees, and other agents, upon ninety-six (96) hours' e-mailed notice by counsel for the Bank to counsel for the Obligors.

2. The Parties are directed to exercise their best efforts to resolve any dispute regarding the terms of this Order and compliance therewith, without the need to seek further judicial intervention.

3.  Upon any proven material default by the Parties on any of the terms the preceding sequestration paragraph, following five (5) days to cure said default by word of counsel, the party may file a "Sworn Certificate of Emergency Based Upon Default in Sequestration Terms" (a "Default Notice"), that shall be given on an emergency basis if the Court finds cause. The Default Notice shall include the names of at least two (2) individuals willing and able to serve as receiver. If the material default is proven to the Court at a hearing, and no good cause is shown by the defaulting party why a receiver should not be appointed, the Court will appoint a receiver for the Collateral without the establishment of any additional facts.

4.  The Parties' obligations hereunder shall remain in full force and effect until further order of this Court. The Court hereby reserves jurisdiction to enforce the terms of this Order and to grant such other and further relief as is necessary.

5.  By their consent to the terms and conditions memorialized in this order, it is understood, agreed, and recognized by the Parties that this order shall not have precedential effect under any doctrine, including without limitation collateral estoppel, res judicata, or any other precedental doctrine, with respect to facts and issues, claims and defenses, or other matters associated with the progress of this case, and shall not constitute law of the case or an admission. Moreover, this Order shall have no force or effect as upon the Junior Lienholders.

**ORDERED** on October 30, 2013.

          **/s/ Richard Smoak**
          **RICHARD SMOAK**
          **UNITED STATES DISTRICT JUDGE**